## CORNELL vs. SKINNER et al.

APPEAL FROM CIRCUIT COURT, RACINE COUNTY.

Heard October 20, 1859.]                    [Decided February 7, 1860.

*Mortgage—Practice—Statutes Repeal of.*

Where a party had commenced a foreclosure of a mortgage under a statute which required the defendant to answer in six months, and before that time expired, and after the defendants had entered their appearance in the cause, the statute was repealed, thus leaving no statute or rule of court prescribing the time in which the answer should be put in; such repeal does not abate the suit, but the plaintiff may serve a notice on the defendants to show cause, and on their neglect to answer, or show cause, judgment will be entered by the court as for a default.

This was an action commenced by Latham Cornell against Russell Skinner, Alice E. Skinner, Otis E. Stevens, Mary A. Stevens, Edwin Skinner, Henry Skinner, Richard Van Alstine, Charles D. Wicker, Joel H. Wicker, Columbus A. Orvis, William H. Dewey, David Rhodes, Alex. McClurg, James D. Vanhovenburg, Nicholas Schneider, Benjamin Raymond, Charles P. Raymond, John G. Conroe, Hugh Gorton, Phillip Lovell, John Kimber, Charles Fountain, John C. Tucker, Thomas Smith, jr., Charles L. Curtis, and John Heley, to foreclose a mortgage, as stated in the opinion of the court. In addition to the facts therein stated, it is only necessary to add that at the commencement of the suit, the defendants had, by law, six moths in which to answer the complaint. But that act was repealed by chapter 220, General Laws 1859, published April 2d, 1859, in express words, thus leaving no time in which the defendants were to answer.

*Wakeley and Tenney,* for the appellant.

*Paine and Millett,* for the respondents.

*By the Court*, DIXON, C. J.   This is an action for the fore-closure of a mortgage.   The summons and complaint, in the usual form, were served on the 15th of November, 1858. On the 8th of December following, the defendants, by their attorneys, Spooner and Dale, entered their appearance.   On the 28th of April, 1859, the plaintiff, after due notice to the attorneys of the defendants, applied to the court for judgment. This application, which was resisted by the defendants' attorneys, was granted by the court, and judgment in the usual form, rendered for the plaintiff.   On the 28th of the follow-ing May, the circuit court, upon the motion of the defend-ants, vacated the judgment.   The reasons assigned for vacat-ing it were " that the time to answer given the defendant by statute, had not expired when the judgment was entered, and that the action was abated by virtue of chapter 220, of the General Laws of 1859."   From the order vacating the judg-ment, the plaintiff took this appeal.

It will be seen at a glance that the only substantial point of difference between this case and that of *Beebe vs. O'Brien et al., supra*, 481, already decided, is that in this case the appli-cation for judgment was made *before* the expiration of the six months time to answer given by the repealed act of 1858, while in that it was made *after*.   The *forms* in which the questions are raised differ.   There the appeal was from an order refusing to allow judgment to be entered.   Here it is from an order vacating a judgment already rendered.   The grounds of both orders are the same, with the exception above stated.   The points discussed in that case need not be noticed here further than to say that under the principles there held, the suit did not abate.   The controversy is, there-fore, reduced to the single question, whether a judgment, ren-dered against defendants who have been regularly served with process and duly notified of the plaintiff's intended application therefor, ought to be set aside or vacated because

Cornell vs. Skinner et al.

there, was no provision of statute, or rule of law or court, prescribing the time within which they were to answer, or when the plaintiff should be at liberty to proceed against them as by default.

The act of 1858 having repealed so much of sec. 158, of the code as authorized an application for judgment in foreclosure actions, after the expiration of twenty days from the time of service, in case no answer was put in, and substituted in place thereof the period of six moths, and the act of 1859 having absolutely repealed that of 1858, without any substituted provisions as to the time to answer in pending actions, left the suit in this very singular and anomolous position. There was no rule of law or practice prescribing when the defendant should put in his answer, or when the plaintiff might proceed to judgment for want of it. It is vain to consult the books for authorities on such a question, for never, since the proceedings of courts of law or equity have been handed down to us by means of written or printed reports, has there to our knowledge been a time when there was not, by some provision of statute or rule of court, a *day certain* given, before which the defendant was permitted to answer, and after which the plaintiff might not proceed for want of it.

This is one of the many questions which have been brought before this court growing out of the enactment, repeal, and subsequent partial re-enactment of our so-called mortgage stay law, and results from an unpardonably hasty and inconsiderate course of legislation. The evils of such legislation have been often felt and frequently commented upon. "No attention," says Mr. Sedgwick in his treatise, "can be paid to our statutory laws without observing the mischiefs resulting from ill considered legislation, violent and sweeping innovation, or the hasty repeal of previous enactments. The inconveniences consequent upon retroactive statutes are often of the most serious character, and cannot be

too frequently pointed out, nor too often insisted on." Perhaps some consolation ought to be drawn from the fact that these are evils of no modern date, and that they are not confined to our state or country. "The mischiefs," says Sir William Blackstone, in his lecture on the study of the law, "that have arisen to the public form inconsiderate alterations in our laws, are too obvious to be called in question; and how far they have been owing to the defective education of our senators, is a point well worthy of attention." "For, to say the truth, almost all the perplexed questions, almost all the niceties, intricacies and delays, (which have sometimes disgraced the English, as well as other courts of justice,) owe their original not to the common law itself, but to innovations that have been made in it by acts of parliament—' over laden,' (as Sir Edward Coke expresses it,) 'with provisos and additions, and, many times, on a sudden penned or concocted by men of none or very little judgment in the law.'"

Although that learned commentator was an ardent devotee to the common law, yet the remarks may not be altogether unworthy of attention in our own times. The mischiefs still exist to an equal, if not a greater extent, both in this country and England. The Lord Chief Justice, in debate in the House of Lords in 1850, said that "the real evil under the present system was that nine-tenths of the time of the judges was taken up in endeavoring to reduce to intelligibility the ill digested legislation of their Lordships' House." It is certainly better that some evils of past legislation should be endured, than that we should, by sweeping innovations and hasty repeals, be kept constantly in doubt as to what the law really is.

In *Beebee vs. O'Brien, Supra*, 481, we decided that the plaintiff, without notice to the defendants, who had not appeared, might proceed to judgment at the expiration of six months after the service of process. The question here is,

Cornell vs. Skinner et al.

whether he could do so before the six months had expired, upon giving notice of his intention so to do to the defendants, all of whom had appeared in the action.   It was contended on the argument, that as there was no rule of law fixing the time within which the defendants must answer or be in default, and as the court had acquired jurisdiction of their persons by the service of the summons, the plaintiff was at liberty, without notice to them, at any time when the court was in session for the transaction of such business, to apply for and obtain his judgment.   In other words, it was said that the defendants, if they desired, were bound to answer at once, or at least that they must take notice of the sessions of the court and be before it, either personally or by attorney, and when the application was made, make known their intention to answer, and contest the plaintiff's claim on the merits, and obtain leave for that purpose.   We do not think this doctrine can, or ought to be sanctioned.   It has been so long the practice to give to a defendant his *day certain* in which to plead, and so careful has the law always been to guard against surprise in such matters, that we think it would be a violation of well settled and sound principle.   A plaintiff intending to take judgment before the expiration of the time to answer fixed by the repealed act, should at least be required to give notice of such intention.

In this case, however, notice was given, and the defendants appeared and resisted the application.   The case does not show upon what grounds such resistance was made, but the inference is that they were the same as those subsequently urged upon the motion to vacate.   At all events, it does not appear that they offered to answer or contest the plaintiff's demand on the merits.   If they had done so, or satisfied the court that they had any good defence, it would have been proper to have refused the application and allowed them to answer.   Not having done this, judgment was pronounced against them.   Was

this judgment so irregular as to warrant its being vacated for the reasons stated in the motion ?   We think not.   It violated no rule of law or practice, and by it exact justice was administered between the parties.

The order of the circuit court is reversed, with costs.

PAINE, J. dissented from the decision in this case, but wrote no opinion.